# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| RONALD MAZZACONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:13-CV-897-TLS |
| | ) | |
| TYSON FRESH MEATS, INC., and | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Ronald Mazzacone, has sued his former employer, Tyson Fresh Meats, Inc., and Tyson Foods, Inc. (collectively, Tyson), under the Americans with Disabilities Act (the ADA) for a failure to accommodate his disability and per se discrimination based on a 100% healed policy. On February 29, 2016, the Court issued an Opinion and Order [ECF No. 29] (the Summary Judgment Order) denying the Defendants' Motion for Summary Judgment [ECF No. 23]. Specifically, the Court found that, when viewing the evidence in a light most favorable to the Plaintiff, a question of fact exists as to whether the Plaintiff is a qualified individual; and, given the contrasting versions of events leading up to the Plaintiff's termination, whether Tyson failed to engage in the interactive process or was responsible for any breakdown in communications between the parties, leading to the denial of a reasonable accommodation. Finally, the Court determined that a material issue of fact existed as to whether Tyson applied a "100% healed policy."

This matter is before the Court on the Defendants' Motion for Reconsideration [ECF No. 31] and accompanying Brief in Support [ECF No. 32], requesting that the Court reconsider the Summary Judgment Order. Tyson maintains that the Court should enter summary judgment in its

favor on all claims because there are no genuine issues of material fact. The Plaintiff filed a Response [ECF No. 36] on April 22, 2016; and the Tyson filed a Reply [ECF No. 39] on May 9, 2016. This matter is now fully briefed and ripe for ruling.

## STANDARD OF REVIEW

A district court is "entitled to reconsider its initial denial of summary judgment, because the denial of summary judgment [i]s simply an interlocutory order, which the district court ha[s] broad authority to reconsider." *Peirick v. Ind. Univ.–Purdue Univ. Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) (stating that orders adjudicating fewer than all claims do not end an action and "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

The Seventh Circuit has discussed the role of a motion to reconsider as follows:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted); *see also LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence.") (internal quotation marks omitted). However, a Rule 59(e) motion may not be used simply to re-litigate issues that have already been decided. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (quotation marks omitted).

## ANALYSIS

### A. Failure to Accommodate

As the Court explained in the Summary Judgment Order, to prevail on a failure to accommodate claim, a plaintiff must show that (1) he is a "qualified individual with a disability"; (2) the defendant was aware of the disability; and (3) the defendant failed to reasonably accommodate the disability. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). While the parties agree that the Plaintiff has a disability for which the Defendants are aware, the dispute in this matter centers around whether the Plaintiff is a "qualified individual" and whether the Defendants failed to reasonably accommodate his disability.

An individual is only "qualified" under the ADA if he is able, "with or without reasonable accommodation, [to] perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines a "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

§ 12111(9) (emphasis added).

At summary judgment, Tyson argued that the Plaintiff was not a "qualified individual" because he failed to identify a vacant light-duty position during the relevant time period. *See, e.g., Fox v. Toyota Motor Mfg., Ind., Inc.*, No. 3:07-cv-71-WGH-RLY, 2008 WL 2705555, at *4

3

(S.D. Ind. Jul. 10, 2008) (finding that the plaintiff is not qualified under the ADA, in part, because "[n]either [the plaintiff] herself [n]or any other witness establish that there was a particular job at the facility that did not violate [the plaintiff's] restrictions which was actually vacant . . . during the time [the Plaintiff] was on medical leave.")[1] The Plaintiff responded by arguing that during his medical leave, he "was never permitted to enter the actual plant so he could see what jobs [the Defendants] had posted and what jobs were available." (Pl.'s Br. 20.)

In its Summary Judgment Order, the Court addressed the Plaintiff's burden of identifying a vacant position as follows:

> Given the Plaintiff's deposition testimony—in which he essentially states that the Defendants prevented him from determining whether a light-duty position was available—th[e] issue [as to whether a vacant light-duty position existed during the relevant time period] collapses into the inquiry as to whether the Defendants failed to reasonably accommodate the Plaintiff's disability. *See* [*Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)] (finding that "[t]he employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites . . . and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations.")[.]

(Summ. J. Order 16, n.8.) The Court then went on to find that "[i]f the Plaintiff's testimony is deemed credible, a reasonable jury may conclude that the Defendants either

---

[1] The Defendants also argued at summary judgment that the Plaintiff is not a "qualified individual" because his proposed accommodation—reassignment to a vacant light-duty position—is not a reasonable accommodation under the ADA. *See Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 680 (7th Cir. 1998) ("The ADA does not compel an employer to reduce the number of bona fide temporary jobs it has set aside . . . and to convert them to permanent positions for its disabled employees."); *see also Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) ("[T]he ADA does not require an employer that sets aside a pool of positions for recovering employees to make those positions available indefinitely to an employee whose recovery has run its course."). However, the Court found—and still maintains—that summary judgment is inappropriate on this point because a jury may reasonably infer that the Defendants' maintained permanent light-duty positions. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998) (finding that a question of fact existed as to whether the light-duty positions at issue were permanent or temporary).

4

failed to engage in the interactive process or were responsible for any breakdown in communications between the parties, and that such actions resulted in the denial of a reasonable accommodation (i.e., reassignment to a [permanent] light-duty position)." (*Id.* at 19.)

In their Motion for Reconsideration, Tyson argues that the Summary Judgment Order improperly relieved the Plaintiff of his burden of proof, particularly the burden to identify a vacant, light-duty position. Tyson, in its Motion to Reconsider, asks the Court to reconsider the distinct burdens of proof for each element of the Plaintiff's claims and critically consider all the facts and precedent in light of this burden of proof.

Having done as Tyson requests, the Court arrives at the same conclusion. There is a genuine issue of material fact regarding the availability of a vacant position to accommodate the Plaintiff. Moreover, there is evidence from which a jury could conclude that the failure to provide that accommodation was due to Tyson causing a breakdown in the interactive process.

It is true that the "the failure to engage in the interactive process by itself does not give rise to relief," and the plaintiff bears the burden to show that a vacant position exists for which he was qualified. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (upholding summary judgment for employer where the plaintiff did not provide any evidence that positions were vacant for which he was qualified and could have performed regardless of his limitations); *see also Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005); *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997). This requires identification of a vacant position "at the time of the adverse employment

decision." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015); *McCreary*, 132 F.3d at 1165 ("Pointing to a current vacancy is required."); *Rehling v. City of Chi.*, 207 F.3d 1009, 1014–15 (7th Cir. 2000) (finding the employee failed to produce sufficient evidence that a vacancy in the desired position existed at the time the employee requested reassignment). *Dalton*, which was cited in a footnote in the Court's Summary Judgment Order, does not alter this burden. Rather, it is a statement about the range of positions that an employer must consider when "reassign[ing]" an employee "to a vacant position." 42 U.S.C. § 12111(9)(B); *Dalton*, 141 F.3d at 678 (requiring an employer to identify "the full range of alternative positions" that the employee could perform under the employer's normal standards and "to consider transferring the employee to any of these other jobs"). However, even considering a full range of alternative positions, the Plaintiff must produce evidence that such positions were vacant at the pertinent time. *Dalton*, 141 F.3d at 680 ("[T]he evidence was insufficient even for summary judgment purposes to show that there were vacant positions filled by temporary workers during the relevant time period to which they could have been reassigned, within the relevant class or broad range of jobs."); *cf. Rehling*, 207 F.3d at 1016 (an employer's failure to engage in an interactive process only leads to potential liability where "the result of that breakdown was the employer's failure to provide a reasonable accommodation"). Simply put, "[a]n employer may be obligated to reassign a disabled employee, but only to vacant positions." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

Instead of identifying a specific vacant position, the Plaintiff argues that he was never permitted to enter the plant to see what jobs were posted. Additionally, his

6

designated testimony was that he was never informed which jobs were available, because the Defendant did not consider him eligible for those jobs. Thus, despite his continued attempts to clarify his restrictions, Tyson refused to consider whether he could perform light-duty jobs. And, as the Court already decided, there is sufficient ambiguity and conflict in the record to question whether Tyson's light-duty positions were permanent or temporary.

With this genuine issue of material fact in play regarding the permanency of the light duty jobs, the Plaintiff correctly likens his case to *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1998). *Hendricks-Robinson* involved permanently disabled employees of Excel who brought a class action alleging that Excel's practice of laying off and terminating such employees violated the ADA. *Id.* at 687. The court determined that it could not decide, on the record before it, that Excel's policy, as a matter of law, fulfilled the requirement that employees be given the chance to consider all available job opportunities. *Id.* at 695.

> Its policy fails, in fact refuses, to consider reassigning its permanently restricted employees to nonproduction jobs unless the employee independently learns about the vacancy and applies for the job. Yet, on this record, it appears questionable whether Excel affords these employees an adequate opportunity to learn of the nonproduction jobs and to express an interest in them. Excel's disclaimers—that it did not prohibit disabled employees from applying for these jobs, that it would have shown a disabled employee a nonproduction job if he had asked, that nonproduction jobs were posted, and that it of course would consider any employee's application for a nonproduction job—are insufficient to support summary judgment in light of at least two hurdles Excel placed in front of the employees on medical layoff. First, the record evidence indicates that Excel had told the laid-off employees that their names would be bid automatically for all available positions in the plant. Second, job openings were posted inside the plant and were left posted for a period of only two days; the employees on medical layoff were not given access to the plant during their

> layoff period and, instead, were told to call the plant once a week—at which time they were told that there were no openings.

*Id.* These deficiencies, in conjunction with others, led the court to conclude that a "reasonable trier of fact could determine that, once an employee's medical restrictions are determined to be permanent, Excel's methodology . . . was directive, not interactive." *Id.* at 700.

While the Plaintiff is not pursuing a systematic challenge to Tyson's policies, the concepts the Seventh Circuit highlighted in *Hendricks-Robinson* should not be ignored for purposes of the Plaintiff's failure to accommodate claim. Additionally, it remains a accurate principle of ADA law that an employer's failure to engage in the interactive process is actionable "if it prevents identification of an appropriate accommodation for a qualified individual." *Spurling v. C& M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014) (quotation marks omitted) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013)). To invoke the interactive process, an employee simply needs to say "'I want to keep working for you—do you have any suggestions?'" *Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 487 (7th Cir. 1997). At that point, "the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill." *Id.*

A reasonable jury could conclude that Tyson's efforts on behalf of the Plaintiff fell short of the marks set forth in *Dalton*, 141 F.3d at 678, and reiterated in *Hendricks-Robinson*, to undertake a comprehensive search for available, alternative positions and facilitate the Plaintiff's placement in those positions. Given the perfunctory "no" that he maintains was given in response to his request for a light-duty position, the Court declines to now hold that his inability to identify a vacant position through discovery methods is a

bar to presenting his claim to a jury. The Court's reluctance to take such a position is influenced by the myriad of uncertainties in the record before it. Although Robertson was deposed, and identified certain positions that the Plaintiff would have been able to perform with his restrictions, he never indicated whether they were available at the relevant time because (as he testified) he believed that the Plaintiff could perform his previous job. Because Robertson did not consider reassignment, there were no positions to identify. (*See* Robertson Dep. 35 (identifying Tyson's accommodation to the Plaintiff as having him return to his regular job).) In addition, Robertson's version of events conflicted with the Plaintiff's: he testified that the Plaintiff did inquire of him whether there were other jobs available that he would be able to do with his restrictions. (*Id.* 88.) Adding to the ambiguity, Tyson does not make any attempt to clarify the process for obtaining a reassignment, indicate how it posts available positions, or state whether it even maintains records of vacant positions that would have existed in 2011. There is too much still missing from, or conflicting within, the record to conclude that the inability to pinpoint a particular job that was open in 2011 should be the factor that removes this case from a jury.

**B.     100% Healed Policy**

A "100% healed policy" constitutes a per se violation of the ADA because it "prevents individual assessment . . . [and] necessarily operates to exclude disabled people that are qualified to work." *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012) (citing *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011) ("[A]ll courts agree that a

100% rule is impermissible as to a disabled person.") (citation and internal quotation marks omitted). Tyson argues that the Court's Summary Judgment Order absolves the Plaintiff from establishing that Tyson implemented a policy that required all employees to return to work without medical restrictions.

In denying summary judgment, the Court relied on testimony from the Plaintiff that, beginning in March 2011, employees of Tyson informed him that he could not return to work unless he could perform a "full-time" or "full-duty" job. *See, e.g.*, Pl.'s Dep. 167–68 (testifying that a Tyson employee, after receiving a work certification indicating that the Plaintiff could return to work with restrictions, informed the Plaintiff that unless he could perform a "full-duty job" he could not return to work). The Court determined that it was appropriate for a trier of fact to weigh the Plaintiff's credibility, and determine whether Tyson, in fact, required the Plaintiff to be cleared of all medical restrictions prior to returning to work, so as to violate the ADA's prohibition against applying a 100% healed policy.

Tyson argues that references to full-time or full-duty work in response to the Plaintiff's request for a light-duty cannot provide the basis for a finding that Tyson implemented a policy that required all employees to be medically released, without any restrictions, before returning to work. They also assert that there is no evidence from which a jury could conclude that Tyson applied this type of policy to the Plaintiff and was requiring him to be fully healed prior to returning to work.

Tyson's point is well taken. The Plaintiff does not point the Court to any statements suggesting that Tyson would not allow him to work while he still had

restrictions. Rather, the entire dispute, under the Plaintiff's version of events, centered around his disagreement with Tyson's policy (as relayed to him) that only employees who were injured on the job could fill light-duty positions. The reference to a "full-duty" or "full-time" job, and to "normal work" was simply a way of distinguishing the reserved light-duty positions from Tyson's other jobs.[2]

According to the Plaintiff, his other disputes with Tyson pertained to its request for a more detailed work certification. (*See* Pl.'s Dep. 240 ("[Counsel:] And when you gave [Robertson] the return to work [certification] from Dr. Philip [on December 5, 2011], what did he say? [Plaintiff:] 'Vague. Vague. That's too vague. I need specifics. Your arm. Your leg. Your back. Everything. I need more specific clarification of this. This is much too vague.'").) The Plaintiff went on to testify that four additional communications took place between he and Robertson (two in-person meetings and two telephone conversations), where the parties discussed revised certifications that were submitted by Dr. Philip and ultimately rejected by Robertson. (*See* Pl.'s Dep. 247) ("[Counsel:] Did you go in and see Kelly Robertson the same day as the phone call? . . . [Plaintiff:] I went in that day. He

---

[2] The Plaintiff argues in his Brief in Response to Defendants' Motion for Summary Judgment that he identified five conversations that took place between March and November 2011 "where he was specifically told he could not return to work unless he could return to full duty with no restrictions." (Pl.'s Br. 31, ECF No. 26.) This is a misrepresenation of the record; although the Plaintiff testified that the words "full duty" were used, he did not state that the managerial employees ever used the words "no restrictions." The Brief also specifically quotes Robertson as saying in August 2011: "You didn't get hurt here. You have to be able to come back here at full duty with no restrictions." (*Id.* 30.) There is no citation to the designated evidence in support of this statement, and the Court could not locate such a statement being attributed to Robertson. The Court found a similar statement, but it does not reference restrictions. The Plaintiff testified that Thatcher told him in April when he asked about light duty work that "I told you last month that Kelly Robertson said you're not getting light-duty work. You didn't get hurt here. You have to come back to work ready to do a full-time job." (Pl. Dep. 182.)

said, 'This [second certification] isn't telling me anything' and he was trying to discourage me. He kept saying, 'What are you we going to do? I'm going to have to let you go if you can't get more specific.'"). This demand for clarification does not support a conclusion that Tyson employed a policy that any person with medical restrictions could not work at Tyson. There would be no point in obtaining more details about the restrictions if Tyson would not employ a person with restrictions—regardless of their nature, i.e., someone who was not 100% healed. Indeed, Tyson's use of a Job Activity Notification form supports the finding that it did not employ a 100% healed policy. Robertson explained that this form was used any time Tyson accommodated an employee's restrictions. (Robertson Dep. 86, ECF No. 26-3.) The form provided options for "light duty," "alternative duty," and "modified job." (*Id.* 87.) He explained the differences:

> Light duty is really what we refer to as restricted duty. It's something that is not their value added job, they're normal job or a job normal within the plant . . . . Alternative duty would be a value added job, but maybe not their particular job. And then the modified would be them doing their job, but maybe not to the extent it normally is. So, they're supposed to do one out of ten. Maybe they're only going to do one out of twenty. We'[re] going to modify that job.

(*Id.* ) The Plaintiff argues that Tyson did not follow its accommodation policy in his situation, but that is different than saying that Tyson employed a 100% healed policy. Outside of his own situation, none of the Plaintiff's evidence suggests that Tyson did not actually modify jobs or assign alternative jobs when it was appropriate to accommodate an individual.

None of the Plaintiff's testimony suggests that a full-duty job was the same as a

job that could only be performed with zero restrictions, and the Plaintiff did not designate any other evidence that would permit a jury to conclude that Tyson eschewed an individual assessment in favor of a 100% healed policy. Having relied on a manifest error of fact regarding the nature of the conversations, particularly in light of the context of the entire case, the Court now grants summary judgment in favor of Tyson on the per se discrimination claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART the Defendants' Motion for Reconsideration [ECF No. 31]. By separate order, the Court will set a telephonic status/scheduling conference.

SO ORDERED on July 18, 2016.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION